IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREA PESACOV,**<br>　　　　**Plaintiff,**<br><br>　　　v.<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA,**<br>　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  19-2789** |

## MEMORANDUM OPINION

Plaintiff Andrea Pesacov seeks benefits pursuant to Section1132(a)(1)(B) of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B), under a long-term disability ("LTD") policy provided by her former employer through Defendant Unum Life Insurance Company of America ("Unum").  The parties have cross-filed for summary judgment, with Plaintiff seeking an award of benefits, and Defendant seeking a declaration that Plaintiff is not entitled to those benefits.  For the reasons that follow, Plaintiff's motion shall be granted and Defendant's motion shall be denied.

**I.　BACKGROUND**

Pesacov worked as a commercial real estate broker for Cushman & Wakefield through mid-2017.  As a benefit of employment, Cushman & Wakefield provided Pesacov with an LTD policy through Unum.  Subject to terms and conditions, the plan provided for payment of monthly benefits to "disabled" plan participants, *i.e.*, participants unable to perform the material and substantial duties of their occupation.

In early July 2017, Pesacov went to the emergency room with abdominal pain.  She was admitted to the hospital and diagnosed with a hemorrhaging duodenal ulcer.[1]  Pesacov required

---

[1] "The duodenum is the first part of the small intestine . . . located between the stomach and the middle part of the

emergency surgery and multiple blood transfusions as a result of these gastrointestinal (GI) issues.  Later medical records would suggest that her blood loss caused "cerebral hypo-perfusion," *i.e.*, a decrease in blood flow through the brain, *see* https://www.merriam-webster.com/medical/hypoperfusion, resulting in cognitive issues.  Other medical records would suggest that her hospitalization aggravated a pinched nerve in her neck.

Once discharged, Pesacov continued to experience GI issues, including gastric obstruction.  She was restricted to pureed foods, vomited regularly, and lost weight.  During this time, Pesacov saw her primary care physician, Dr. Vicki Bralow, and also began seeing a gastroenterologist, Dr. Immanuel Ho.  On Ho's advice, Pesacov underwent two dilation[2] procedures to ease her obstruction—one in September, and one in October.  As of December, however, Pesacov remained unable to eat solid foods, and Bralow recommended a third dilation.  Pesacov made a claim for LTD benefits, and on the basis of her "disabling limitations and restrictions," and her likelihood of requiring further surgery, Unum approved the claim on February 2, 2018 (with benefits backdated to July 3, 2017).  Continued receipt of benefits was contingent upon Pesacov's continuing disability.

By Spring 2018, Pesacov's GI condition began to improve.  In April, Bralow recommended Pesacov begin incorporating salads into her diet, and in May, Ho noted that she had begun eating some solid foods but recommended a third dilation.  Also in May, a

---

small intestine."  https://medlineplus.gov/ency/article/002347.htm.

Throughout this opinion, to ease the reader's understanding of the matters described herein, definitions and descriptions of various illnesses and procedures, as well as the usages for different prescription medications are provided.  Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Such facts include dictionary definitions.  *See, e.g.*, *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284 (3d Cir. 2004) (citing to two different dictionaries to define the word "imminent").  "[A] court may [also], in certain circumstances, . . . take judicial notice of information 'in the public realm.'"  *Mollett v. Leith*, 2011 WL 5407359, at *3 (W.D. Pa. Nov. 8, 2011), *aff'd sub nom. Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013).
[2] A dilation is "the action of stretching or enlarging an organ or part of the body."  https://www.merriam-webster.com/dictionary/dilation.

cardiologist noted that Pesacov "had episodes of upper abdomen and lower chest pain" and pain after eating, but was exercising without incident.  In June, Pesacov had her third dilation, and by July, she was, according to Bralow, "[a]lmost fully dilated" and eating chopped rather than pureed food.  On the basis of this improvement, Dr. James Folkening, a physician reviewing Pesacov's file on behalf of Unum, concluded that Pesacov could return to work.  Folkening wrote to Bralow on August 9 asking for her opinion within ten days.  Meanwhile, two other physicians, Drs. Christine Sullivan and James Bress, also reviewed Pesacov's file on behalf of Unum, and they, like Folkening, concluded that Pesacov was no longer disabled.  Having received no response from Bralow, Unum proceeded to terminate Pesacov's benefits on September 7.

      A week later, Pesacov visited a physical therapist and received treatment for hand and arm pain which was causing her difficulty with basic tasks.  Then, on September 24, Bralow answered Folkening, writing that Pesacov was still "not well and not able to work."  Though Bralow explained that she had not "physically seen Bralow since July because she had lost her health insurance," she stated that they spoke "on a regular basis" and that Pesacov "ha[d] vomiting and pain on a daily basis" and was "unable to eat foods unless they are pureed."  She also stated that Pesacov had a pinched nerve affecting her arms which had been aggravated by her 2017 hospitalization.  Sullivan and Bress then reviewed Bralow's response and the physical therapy records but concluded it did not support reinstating benefits.  In particular, they found Bralow's report of daily vomiting and pain and restriction to pureed foods inconsistent with her and Ho's April and May notes indicating an improvement in Pesacov's digestion and diet.  On October 3, Unum notified Pesacov that it was upholding its denial.

      Pesacov appealed Unum's decision that same day and provided additional medical

3

records in February 2019 to support her disability claim.  She provided records from an early October 2018 visit with Bralow where Bralow noted that Pesacov still had "a lot of GI issues and pain" and was even having problems digesting pureed or mashed foods, as well as of a visit with Ho in January 2019.  And, she provided records from visits in December 2018 and January 2019 with a neurologist, Dr. David Tabby.

During Pesacov's first visit in early December, Tabby noted that she lost her train of thought and had poor balance.  He assessed Pesacov with "[s]ignificant cognitive reduction due to cerebral hypo-perfusion associated with critical illness" and concluded that "[h]er current cognitive function is insufficient for her to return to her profession."  He also recommended cognitive testing.  A few days later, Pesacov took a cognitive test at Tabby's office.  Her scores indicated cognitive impairment, and during a follow-up visit, Tabby reiterated his assessment of "cognitive impairment due to cerebral hypoperfusion."  Tabby filled out "Medical Source Statements of Ability to Do Work-Related Activities" forms on behalf of Pesacov for the Social Security Administration following this third visit, and though he indicated "moderate" mental impairments, he indicated physical impairments such that Pesacov could only sit for two to four hours a day and stand for only one hour a day, as well as other motor skill issues.  Then, between this third visit with Tabby (when they discussed her test scores) and her fourth visit in January, Pesacov visited Ho, who described her GI issues as "improved remarkably" but noted that "[s]he appear[ed] to be suffering from short term memory loss."  And, finally, during Pesacov's fourth and final visit with Tabby in January, Tabby noted no improvement in Pesacov's cognition or balance.

In March 2019, Dr. James Maguire reviewed these additional records on behalf of Unum. He dismissed Tabby's assessment of cerebral hypoperfusion, noting that records from Pesacov's

2017 hospitalization did not mention a lack of blood-flow to the brain specifically or cognitive issues generally. He also questioned the accuracy of Tabby's testing. Ultimately, he concluded Pesacov was not disabled from cognitive issues. He also concluded, primarily on the basis of Ho's December notes, that Pesacov was also no longer disabled from her GI issues. On March 26, 2019, Unum denied Pesacov's appeal, and this litigation followed.

## II.     STANDARD OF REVIEW

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotations omitted), and "[t]he rule is no different where there are cross-motions for summary judgment," *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008). "A genuine dispute of material fact is one that could affect the outcome of the litigation." *Boyles v. Am. Heritage Life Ins. Co.*, 226 F. Supp.3d 497, 501 (W.D. Pa. 2016). "Where[, however,] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). Under Section 1132(a)(1)(B) of ERISA, "claims that involve no disputes of material fact, but merely a dispute over whether the undisputed facts are sufficient to trigger benefits under a plan's disability definition" are appropriate for summary judgment. *Neumann v. Prudential Ins. Co. of Am.*, 367 F. Supp.2d 969, 980 (E.D. Va. 2005). Here, the "parties agree that there are no material disputes of fact and [that] the pending motions should be resolved based on the administrative records." *Boyles*, 226 F. Supp.3d at 502; *see also Watson v. Metro. Life Ins. Co.*, 2007 WL 2029291, at *3 (E.D. Pa. July 11, 2007) (determining that summary judgment was appropriate in an ERISA case where "[b]oth parties agree[d] on the relevant facts

5

and refer[ed] to the same standardized record").

"[A] denial of benefits challenged under [Section] 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).[3]  Here, the parties agree that the plan does not give the administrator discretionary interpretive authority, so review is de novo.  In the ERISA context, "[d]e novo means . . . as it ordinarily does, that the court's inquiry is not limited to or constricted by the record, nor is any deference due the conclusion under review." *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1184 (3d Cir. 1991) (internal alterations omitted).  However, "[i]f the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a de novo review of the record of the administrator's decision, making its own independent benefit determination." *Id.* at 1185.  In essence, "the role of the court [on de novo review] is to determine whether the administrator made a correct decision . . . and whether the insured was entitled to benefits under the plan." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413-14 (3d Cir. 2011) (internal quotations, citations and alterations omitted).  Because the record in this case is extensive, and the parties agree that there is no need to review anything but the administrative record, no additional evidence is required.

## III.   DISCUSSION

In determining whether a claimant is entitled to benefits under an ERISA plan, one "begins . . . with the language of the plan defining disability," and then considers whether the claimant's diagnoses render her disabled under the plan. *Vastag v. Prudential Ins. Co. of Am.*, 2018 WL 2455921, at *9-10 (D.N.J. May 31, 2018).  The burden of proof is with the claimant,

---

[3] In cases where the plan does have discretionary authority, review is under an arbitrary and capricious standard. *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).

who must prove she is disabled by a preponderance of the evidence.  *See Gilewski v. Provident Life & Accident Ins. Co.*, 683 F. App'x 399, 406 (6th Cir. 2017); *Greenblatt v. Budd Co.*, 666 F. Supp. 735, 740 (E.D. Pa. 1987) (applying preponderance of the evidence standard in pension benefits case); *DeCurtis v. Metro. Life Ins. Co.*, 2006 WL 1330112, at *9 (M.D. Pa. May 16, 2006) (explaining that plaintiff in disability benefits case "has the burden of proving that he cannot perform any of the substantial and material duties of his occupation").[4]  And, this burden "does not change because a [claimant] qualified at one point in time for disability benefits and the benefits were later terminated when she no longer qualified."  *Id.* (citing *Muniz*, 623 F.3d at 1294).[5]

The observations and opinions of medical professionals employed by either the claimant or the insurer are considered to determine whether a claimant has proved her disability.  Though a claimant's treating physicians are not entitled to "automatic[]" deference, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), "in a close case," the opinions of a treating physician may be favored.  *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004).  The "length of the relationship between claimant and physician and whether any of the physicians in question are specialists in the relevant medical discipline" are also to be taken into account.  *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp.2d 261, 289 (W.D.

---

[4] The Third Circuit has held that the burden is on the plaintiff to prove his entitlement to benefits in cases reviewed under the arbitrary and capricious standard, *i.e.*, in cases in which the plan gives the administrator discretionary interpretive authority.  S*ee Foley v. International Brotherhood of Elec. Workers Union 98 Pension Fund*, 271 F.3d 551, 559 n.9 (3d. Cir. 2001).  But, the Circuit has not definitively determined who bears the burden of proof in a case subject to de novo review, as is the case here.  However, the Ninth, *see Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010), Eleventh, *see Oliver v. Aetna Life Ins. Co.*, 613 Fed. App'x 892, 896 (11th Cir. 2015), Fifth, *see Shanker v. United of Omaha Life Ins. Co.*, 768 F. App'x 295, 298 (5th Cir. 2019), and Eighth Circuits, *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir.1992), have held that the burden remains with the plaintiff in such cases.

[5] *Miller*, in which the Third Circuit found that the insurer's reversal in disability determination weighed against the insurer, is not to the contrary.  In that case, the insurer had changed its determination despite having received no "new information."  632 F.3d at 837.  Here, however, Pesacov provided Unum with new information both following their initial denial in September and on appeal.

Pa. 2008); *see also Vastag*, 2018 WL 2455921, at *14.  A relevant factor is also whether a physician's opinion is inconsistent with her prior determinations, or other physicians' determinations.  *See Shatto v. Liberty Life Assur. Co. of Bos.*, 2016 WL 5374106, at *11 (E.D. Pa. Sept. 26, 2016); *Gilewski*, 683 F. App'x at 406.

Turning now to the language of the plan, it states in relevant part:  "You are disabled when Unum determines that: - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury. . . ."  The word "limited" is defined in the plan as "what you cannot or are unable to do."  As for Pesacov's material and substantial duties, the parties agree that Pesacov's position as a commercial real estate broker constituted "light work" which required occasional exertion of up to 20 pounds, frequent sitting and occasional standing and walking, and the ability to drive.  Though the parties use somewhat different language to describe the specifics of Pesacov's job duties, both agree that Pesacov's work involved interacting with others, and performing duties such as developing business, negotiating property sales, preparing or supervising the preparation of lease agreements, inspecting or coordinating inspection of properties, and remaining current on developments which could impact the real estate industry generally or company properties specifically.  The parties also agree that Pesacov was unable to perform these duties between July 3, 2017 and September 7, 2018 and was therefore disabled.  They disagree as to whether she was disabled after September 7.

**A. Pesacov's GI Issues**

Unum argues that, by September 2018, Pesacov was well enough to work because her GI issues had improved and were almost entirely resolved.  As evidence, Unum highlights Ho's May 2018 and Bralow's April and July 2018 notes indicating improvement in Pesacov's diet and

digestion, as well as Ho's January 2019 notes confirming his earlier observations. As for Bralow's September and October 2018 statements about Pesacov's continued pain and vomiting, Unum dismisses these as inconsistent with both her prior observations and Ho's later observations. Pesacov, by contrast, relies chiefly on Bralow's September letter and October notes to support her claim that she has been continuously disabled by GI issues.

Though the parties disagree about which doctor is more credible—Bralow or Ho—the records indicate that Pesacov's condition began to improve in Spring 2018 and continued to improve throughout Fall and Winter 2018, according to *both* Bralow and Ho. Beginning in April, Bralow recommended that Pesacov—who had been restricted to puree until then—"advance [her] diet [with] salads." Then, in May, Ho confirmed Pesacov's "advance[ment]" to increasingly solid foods, noting that she was "able to tolerate lunch meats and shaved chicken strips." However, Ho also noted that, "at times [Pesacov] would have vomiting" from vegetables, and he recommended a third dilation to address this limitation. Likewise, Pesacov's cardiologist noted later in the month that Pesacov "has had episodes of upper abdomen and lower chest pain," and that her "[m]ost recent pain was sharp and squeezing and occurred after eating."

In June, Pesacov underwent her third dilation, and Bralow's notes from July describe Pesacov as "[i]mproved. Almost fully dilated after last procedure. Eating all foods now chopped up though but not pureed." Reports from that Fall were somewhat less optimistic. Setting aside Bralow's September letter in response to Folkening—whose content she admitted was derived from phone conversations with Pesacov, *see Sell v. Unum Life Ins. Co. of Am.*, 2002 WL 31630707, at *7 (E.D. Pa. Nov. 19, 2002) (declining to credit physician's opinion where the physician changed his opinion "without a new examination of [claimant]")—Bralow likewise maintained in October that Pesacov was still having "a lot of GI issues and pain. Diarrhea with

undigested food.  foods pureed or mashed are tolerated but not completely and abdominal pains." However, unlike in the September letter, she did not mention continued vomiting.  Similarly, Ho reported on January 10, 2019 that Pesacov had vomited only three times following her third dilation in June 2018.  And, he specifically noted that she was "taking in a lot of raw vegetables"—something she had struggled to do prior to her third dilation without vomiting.  Overall, he described Pesacov's duodenal issues as "improved remarkably," and concluded she was likely not suffering from nutrient "malabsorption."

Though the record does suggest that Pesacov was still struggling with some GI issues when Unum terminated her benefits in September 2018, the question here is not whether Pesacov was struggling, but whether she was struggling so severely that she was unable to perform the material functions of her occupation.  While Pesacov's abdominal pain and digestive problems undoubtedly caused her discomfort, she has not proven by a preponderance of the evidence that these issues rendered her unable to perform the material functions of her occupation.  Unlike in February 2018, when Unum initially approved her benefits, Pesacov was not due for surgery, was not restricted to a pureed diet, and was not regularly vomiting.  Rather, despite some discomfort, she was able to eat chopped or mashed foods and was gaining weight.  In sum, the record does not support the conclusion that, in isolation, this pain and these dietary limitations rendered Pesacov unable to interact with others, develop business, negotiate terms, inspect or coordinate property inspections, prepare documents related to real estate transactions and otherwise perform the duties of a commercial real estate broker after September 7, 2018.

### B. Pesacov's Physical Limitations and Cognitive Deficits

That Pesacov's GI issues alone did not render her disabled as of September 2018 does not, however, mean she was well enough to resume work as a commercial real estate broker.

Following Unum's termination of benefits, Pesacov submitted records pertaining to physical limitations and cognitive deficits connected to—though symptomatically distinct from—her GI issues. Unum argues that this evidence is not credible, and that, to the extent the evidence is credible, it does not support a finding of disability. Pesacov disagrees.

The record indicates that, while Pesacov's GI issues had improved substantially by September 2018, she suffered from physical limitations and cognitive deficits connected to her 2017 illness, hospitalization and treatment. With respect to Pesacov's physical limitations, the existence of such limitations is supported by records from both Tabby and a physical therapist, Andrew Lesher, to whose practice Pesacov had been referred to by Dr. Larry Chou, a pain management specialist. Pesacov visited Lesher for a pinched nerve in September 2018, following Unum's termination of benefits. The clinical notes from this visit indicate that Pesacov had received physical therapy for this pinched nerve as early as 2014, substantiating Bralow's observation in her September letter that Pesacov was "struggling with a pinched nerve in her cervical spine with radiculopathy down both arms[, which had been] exacerbated during her hospital stays and procedures because of the positions she was placed in during her procedures." During her visit with Lesher, Pesacov stated that "she continue[d] to be unable to work due to pain," which she described as a "9/10 at worse." Specifically, she reported that the pain caused her difficulty with handwriting, opening jars, turning keys, preparing meals, washing or drying her hair, managing transportation, making a bed, carrying shopping bags or briefcases, pushing open heavy doors, and placing objects on shelves above her head. The therapist ultimately assessed her with "bilat[eral] cervical irritation with brachial plexopathy [a]nd postural symptom compounding the problem."[6]

---

[6] The American Association of Neuromuscular and Electrodiagnostic Medecine explains that:

Tabby's observations as recorded in the physical ability portion of the Social Security forms he completed in December 2018 corroborate these assessments. For example, Tabby opined that Pesacov could only sit for two to four hours during an eight hour workday (with breaks); that she could only stand for one hour a day (with breaks); that she could only occasionally carry 10 pounds, rarely carry 20 pounds, and never carry 25 pounds or more; that she could rarely push or pull with her upper or lower extremities; that she could only occasionally climb stairs, rarely bend or stoop, never crouch, or climb ramps or ladder; and that she could rarely reach in all directions. All of these materials were available to Unum during the appeals process.

Unum does not address these findings by Tabby and Lesher as to Pesacov's physical limitations in much detail in its briefing. However, according to Unum's own criteria, Pesacov's position required "occasional exertion of up to 20 lbs; frequent sitting; occasional walking and standing; driving is required." Tabby's finding that Pesacov could only occasionally carry objects of up to 10 pounds and rarely carry 20 pounds, and Lesher's statement that Pesacov was having problems carrying light objects such as grocery bags and briefcases are inconsistent with the conclusion that Pesacov was able to exert up to 20 pounds, even occasionally. And, Tabby's indication that Pesacov had poor balance, could only sit for two to four hours a day and only walk or stand for one hour a day, is also inconsistent with the conclusion that Pesacov could sit, walk and stand for the duration of a workday. Pesacov's driving ability is also called into question by Tabby's December 3, 2018 statement that Pesacov had lost the ability to parallel

---

> [t]he brachial plexus is a group of spinal nerves that extend through the arm to the hand. Nerve roots leave the neck and shoulder where nerves from the spinal cord divide into the specific nerves for the arm to form a web. Brachial plexopathy occurs when the brachial plexus is not operating correctly, causing a lack of movement and lack of feeling in the arm and shoulder. . . . Damage to it can cause numbness, tingling, pain, and weakness in various areas of the arm, hand and shoulder, depending on which part of the plexus is injured.

https://www.aanem.org/Patients/Muscle-and-Nerve-Disorders/Brachial-Plexopathy.

park, as well as by Lesher's statement that Pesacov was having difficulty "managing transportation."

Unum does, however, thoroughly address Tabby's findings as to Pesacov's cognitive deficits and their underlying cause—cerebral hypoperfusion. Unum's argument that Tabby's findings do not support a finding of disability is two-fold. First and foremost, Unum argues that Tabby—and by extension, Pesacov—should not be believed.[7] And, to discredit Tabby, Unum asserts that "Tabby's opinions are inconsistent with the historic medical records [because] Pesacov's medical records from July 2017 refer to neither cerebral hypo-perfusion nor cognitive problems." Unum also questions the validity of the cognitive testing performed by Tabby, which it characterized as being of uncertain "clinical value" because it "does not consider the claimant's effort, performance, or provide validity testing." Second, Unum argues that, if Tabby *is* to be believed, then his conclusions actually support its position. Specifically, Unum characterizes Tabby's position as being that Pesacov could "still function satisfactorily" despite certain limitations. Unum comes to this conclusion by relying on the Social Security forms Tabby completed in December 2018, where Tabby described Pesacov as suffering from "moderate" mental impairments.

Unum's characterization of Pesacov's medical history and Tabby's findings is, however, misleading. Pesacov visited Tabby on December 3, 11 and 13, 2018 and on January 23, 2019. In his December 3 intake notes, Tabby stated that Pesacov had "complained of poor concentration and memory loss" since being discharged from the hospital in 2017. He

---

[7] Unum also attempts to discredit Pesacov by implying that her complaints about cognitive deficiencies were fabricated after the first denial of benefits. However, Unum itself admits that Pesacov raised these concerns before the September 2018 denial. To wit, in August 2018, Sullivan noted that Pesacov "complained of cognitive deficits and migraines;" however, she considered these complaints insufficient to justify a finding of cognitive deficit because "there were no abnormal mental status test results and no referrals for either neuropsychiatric testing or treatment with a neurologist or psychiatrist." And, in September, after Bralow responded to Folkening's inquiry but before Pesacov appealed Unum's denial, Sullivan reported that "[t]he insured reports cognitive impact of the gastrointestinal event, decreased stamina and migraines contribute to an inability to return to work."

continued:

> Her cognition is markedly slowed and disorganized from her pre-morbid high function baseline. She looses [sic] her train of thought. She lost the ability to parallel park her car. She has left-right confusion. . . . Her walking balance is poor. . . . Her current cognitive function is insufficient for her to return to her profession.

Following a physical exam, Tabby also noted that Pesacov's "gait has a wide base. She cannot tandem walk." Ultimately, Tabby assessed Pesacov with "[s]ignificant cognitive reduction due to cerebral hypo-perfusion associated with critical illness" and recommended cognitive testing. Though Unum characterizes this diagnosis as unsupported, it is undisputed that Pesacov suffered a "critical illness" in 2017, when she required repeated hospitalization for her GI issues. It is also undisputed that, as a result of this illness, she lost enough blood to require multiple blood transfusions. Further, Tabby documented multiple symptoms associated with cerebral hypoperfusion in his clinical notes, such as poor balance, memory loss and confusion. Though an MRI on December 8 detected no physical abnormalities, cognitive testing performed in Tabby's office on December 11 indicated cognitive impairment. The testing performed evaluated Pesacov's memory, executive function, attention, visual/spatial awareness, verbal function, problem solving and working memory. Of the tested categories, only Pesacov's visual/special awareness and problem-solving scores indicated normal functioning, and Pesacov received a below-mean global cognitive score. When Pesacov returned to review her scores on December 13, Tabby reiterated his assessment of "cognitive impairment due to cerebral hypoperfusion," and he prescribed her Nuedexta and Tradozone.[8] He indicated "no improvement in her cognition or balance" and noted that Pesacov remained "very concerned about her ability to make a living." Then, on January 10, 2019, Ho corroborated some of

---

[8] Neudexta is used to treat certain neurological disorders, and Tradozone is an antidepressant.

Tabby's observations. Ho stated in his intake notes that Pesacov "has seen Dr. Bralow because of 'something wrong with my brain'" and noted that "[s]he appears to be suffering from short term memory loss." Ho then recommended Pesacov undergo further testing for these issues. Likewise, during Pesacov's fourth visit with Tabby on January 23, Tabby reiterated that Pesacov "remain[ed] concerned about her ability to make a living," that she was "not aware in improvement in her cognition," and that her "balance remain[ed] poor." He prescribed her Memantine and Somatropin, in addition to the drugs she was already taking.[9]

When Tabby completed the Social Security forms on Pesacov's behalf on December 23, 2018, he highlighted some effects of Pesacov's condition. On the mental ability form, Tabby indicated that Pesacov's impairment affected her ability to "understand, remember and carry out instructions" and noted moderate impairment in this area, where "moderate" was defined as "[t]here is moderate limitation in this area, but the individual is still able to function satisfactorily." Specifically, this area included the ability to: understand and remember short, simple instructions and detailed instruction; carry out short, simple instructions and detailed instructions; and make judgments on simple work-related decisions. Tabby also indicated moderate impairment in Pesacov's ability to "respond appropriately to supervisors, co-workers, and work pressures." This area specifically included the ability to: interact appropriately with the public, supervisors and co-workers; and respond appropriately to work pressures in a usual work setting, and to changes in a routine work setting. On the physical ability portion of the form, completed that same day, Tabby likewise indicated an impairment in "speaking."

Though Unum maintains these forms indicate that Pesacov could perform her job "satisfactorily," this does not follow. Certainly, the fact that Pesacov could satisfactorily

---

[9] Memantine is often used to treat symptoms such as memory loss and confusion. Somatotropin is a growth hormone.

"understand and remember . . . instructions," "carry out instructions," "make [simple] judgments," interact with others and respond to pressure and change means she was not completely incapacitated. However, the question in this case is not whether Pesacov was able to perform some work, any work. The question is whether she was able to perform the material and substantial functions of *her occupation*, which according to Unum's own documentation included complex tasks such as "examin[ing] property listings," "accompany[ing] prospects to real estate sites," "draw[ing] up real estate contracts," as well as "influencing people in their opinions," "making judgment and decisions" and "dealing with people"—tasks which required more than just making simple judgments or following directions. Pesacov's work was intellectually demanding and required stamina, initiative, technical knowledge, attention to detail, and the ability to influence others.

Considering Pesacov's documented physical limitations and cognitive deficits—in particular, her inability to sit or stand for a full workday and her memory lapses—Pesacov has proven by a preponderance of the evidence that she was disabled by physical and mental limitations both when Unum terminated her benefits and when it denied her appeal.[10] Pesacov is not required to prove her disability beyond all doubt, or beyond a reasonable doubt. Those are not the standards that apply here. Rather, she is required to prove it is more likely than not that she was disabled, *see Greenwich Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730, 736 (3d Cir. 1993), *aff'd sub nom. Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994) ("Thus, a party proves a fact by a preponderance of the evidence when he proves that the fact's existence is more likely than not."). She has done so here. Specifically, the representations of Tabby and Lesher—who, unlike

---

[10] Conversely, as detailed, Unum's assertion that Pesacov's medical records do not back up a finding that she suffered from significant physical limitations and cognitive deficits is unsupported.

Sullivan, a generalist, were specialists in neurological and musculoskeletal conditions, respectively—satisfy this burden. *See Vastag*, 2018 WL 2455921, at *14 (agreeing with claimant's treating physicians, who were specialists, rather than the insurer's reviewing physician's findings that claimant was not disabled, where these physicians "demonstrated [no] expertise" in the condition at issue). Therefore, Unum erred in denying Pesacov's appeal and finding she was not disabled from physical limitations and cognitive deficits.

### C. Remedy

Having found that Unum did not "ma[k]e a correct decision," *Viera*, 642 F.3d at 414, the question becomes what is the appropriate remedy? Unum requests remand, while Pesacov requests retroactive reinstatement of benefits.

District courts have "considerable discretion" in determining the appropriate remedy for a wrongful termination of benefits. *Cook v. Liberty Life Assur. Co. of Bos.*, 320 F.3d 11, 25 (1st Cir. 2003) (cited favorably in *Carney v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, 66 F. App'x 381, 386 n.2 (3d Cir. 2003)). However, where "the administrator's termination decision was unreasonable," "retroactive reinstatement of benefits is the proper remedy." *Miller*, 632 F.3d at 856.[11] This is particularly true where the plan initially awarded benefits but subsequently terminated them. *Id.*

---

[11] In *Miller*, the Third Circuit explained that in "deciding whether to remand to the plan administrator or reinstate benefits, we note that it is important to consider the status quo prior to the unlawful denial or termination." 632 F.3d at 856. "[W]here benefits are improperly denied at the outset, it is appropriate to remand to the administrator for full consideration of whether the claimant is disabled. . . . [However, i]n the termination context . . . a finding that a decision was arbitrary and capricious means that the administrator terminated the claimant's benefits unlawfully [and] benefits should be reinstated to restore the status quo." *Id.* at 856-57.

Unum argues *Miller* is not controlling because here, unlike *Miller*, where the insurer's decision was subject to arbitrary and capricious review, "this case involves whether, on a de novo basis, Pesacov is entitled to benefits." However, remand is also appropriate in cases reviewed under a de novo standard. *See Vastag*, 2018 WL 2455921, at *15 (applying *Miller* and ordering reinstatement of benefits following de novo review of plan's benefit denial); *see also Levine v. Life Ins. Co. of N. Am.*, 182 F. Supp.3d 250, 266 (E.D. Pa. 2016) ("Upon finding that a plan administrator has not reached a correct decision *under a de novo standard*, a court may either remand the case to the administrator for a re-evaluation of the claim or retroactively award benefits." (emphasis added)).

That a court may award retroactive benefits is not to say that it has authority "to render a de novo determination of an employee's eligibility for benefits." *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002). It is only to say that "absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan." *Id.*; *see also Cook*, 320 F.3d at 24 (explaining that the "axiom" that ERISA "provides no authority for a court to render a de novo determination of an employee's eligibility for benefits . . . does not deprive a court of its discretion to formulate a necessary remedy when it determines that the plan has acted inappropriately"). Here, however, it is uncontested that Unum has made a determination as to Pesacov's eligibility for benefits—first awarding them, and then later terminating them. Therefore, either remand and/or reinstatement of benefits are available remedies.

Because "remand is unnecessary where the claimant would have received benefits had the correct review been performed," *Levine*, 182 F. Supp.2d at 266, an award of benefits is warranted to "restore the status quo," *Miller*, 632 F.3d at 857. Specifically, Pesacov is entitled to retroactive benefits for the period between Unum's initial termination of benefits through the denial of her appeal (*i.e.*, from September 7, 2018 to March 26, 2019). Because there is no information on the record concerning Pesacov's condition following Unum's denial of her appeal, however, the case is remanded for a determination as to whether Pesacov remained disabled after March 26, 2019.

An appropriate order follows.

**May 28, 2020**

                                                    **BY THE COURT:**

                                                    **/s/Wendy Beetlestone, J.**

                                                    _____

                                                    **WENDY BEETLESTONE, J.**